UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
Case No. 1:18-25099-CIV-MORENO

ACHERON PORTFOLIO TRUST, AVERNUS
PORTFOLIO TRUST, LORENZO TONTI
2006 TRUST, STYX PORTFOLIO
TRUST, and ACHERON CAPITAL, LTD.,

     Plaintiffs,

v.

BARRY MUKAMAL, as Trustee of the
MUTUAL BENEFITS KEEP POLICY
TRUST,

     Defendant.
_____/

**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Acheron Portfolio Trust ("Acheron Trust"), Avernus Portfolio Trust ("Avernus Trust"), Lorenzo Tonti 2006 Trust ("Tonti Trust"), STYX Portfolio Trust ("STYX Trust") and Acheron Capital, Ltd. ("Acheron Capital"), in its capacity as the investment manager for Acheron Trust, Avernus Trust, Tonti Trust and Styx Trust, (collectively, the "Plaintiffs" or "Acheron") submit their response and opposition to Defendant's Motion to Dismiss First Amended Complaint (the "MTD"), and state as follows:

### I.    INTRODUCTION

Plaintiffs' First Amended Complaint (the "Complaint") against Defendant Barry Mukamal, as Trustee of the Mutual Benefits Keep Policy Trust (the "Defendant" or "Trustee"), alleges four separate causes of action. The first two causes of action allege numerous breaches of contract and breaches of fiduciary duty by the Trustee. As ancillary and/or alternative causes

of action, Plaintiffs allege that the Trustee breached his legally *implied* (1) duty of good faith and fair dealing and (2) fiduciary duty. Attached to the Complaint are multiple exhibits including copies of the three agreements executed by the Trustee that form the foundation of the Complaint: (1) the Mutual Benefits "Keep Policy" Trust Agreement, dated as of September 25, 2009 (the "Trust Agreement") (Exhibit B); (2) an Asset Purchase Agreement ("APA"), together with a related bill of sale ("Bill of Sale") (Composite Exhibit C)[1]; and (3) an Agreement dated March 19, 2015 between the Trustee and Acheron (the "March 2015 Agreement") (Exhibit D).

Over the course of more than 30 pages and 164 separate factual allegations, the Complaint details the Trustee's breaches of contract and fiduciary duty dating back to at least 2015. Rather than address the substance of the Complaint in an Answer, the Trustee asserts that the Complaint "fail[s] to state *any* viable cause of action" (emphasis added).[2]

The MTD does not allege that Acheron pled insufficient facts or mere legal conclusions. Instead, the Trustee claims that Acheron's claims are all barred as a matter of law. To make this argument, the Trustee is forced to ignore the legal standard applicable to the MTD and misconstrue and mischaracterize the Complaint. For the reasons detailed below, the Court should deny the Motion to Dismiss and require the Trustee to Answer the Complaint.

## II.   LEGAL STANDARD FOR THE MTD

The Trustee fails to discuss the applicable legal standard for the Court's consideration of the MTD. Perhaps this is because the law is so well established that the Trustee believes it does not merit discussion. More likely, the omission is driven by the fact that the applicable legal

---

[1] The APA and Bill of Sale attached to the Complaint are representative examples of the numerous APAs and Bills of Sale, which have been executed and (as alleged in the Complaint) breached by the Trustee.

[2] MTD, p. 1.

standard highlights the weaknesses in the Trustee's arguments.

When ruling on a motion to dismiss, the court takes the allegations in the complaint as true and views the well pled facts in the light that is most favorable to the plaintiff. *See Abram v. Fulton Cnty. Gov.*, 482 F. App'x 421, 423 (11th Cir. 2012). The factual allegations in the complaint are taken as true on a motion to dismiss even if they are subject to dispute. *See Devengoechea v. Bolivarian Republic of Venezuela*, 889 F. 3d 1213, 1220 (11th Cir. 2018). Arguing the merits on a motion to dismiss is inappropriate. *See Hansen v. Geovera Specialty Ins. Co.*, 2008 WL 816686 (M.D. Fla. Mar. 26, 2008); *see also Conocophillips Co. v. U.S. Agri-Chemicals Corp.*, 2007 WL 2021959 (M.D. Fla. July 11, 2007). Applying these standards, the MTD must be denied.

### III.   THE $2 MILLION CREDIT

The Trustee's opening argument is that Acheron's claims are barred by principles of issue preclusion or collateral estoppel because of a decision by this Court in the related case of *Securities and Exchange Commission v. Mutual Benefits Corp.*, Case No. 04-60573-CIV-Moreno (the "Receivership Action"). Remarkably, the Trustee argues that *all* of Acheron's claims are barred by issue preclusion. *See, generally,* MTD, pp. 2-6 and 13. The Trustee's argument is without merit because the Complaint does not re-raise *any* issue previously decided by this Court.

The underlying facts relevant to the Trustee's issue preclusion / collateral estoppel argument are not in dispute and can be summarized as follows:

(a)   In 2004, Roberto Martinez (the "Receiver") was appointed in the Receivership Action as the Receiver for Mutual Benefits Corp. ("MBC") and related companies (the "Receivership Entities");

(b) In 2009, the Receiver was authorized to transfer certain viaticated insurance policies (the "Keep Policies") to the Trustee for administration pursuant to the Trust Agreement;

(c) The Receiver subsequently received additional funds totaling more than $2 million and, *on August 30, 2018*, filed a motion (the "Receiver's Motion") requesting authority to transfer those funds to the Trustee to be applied as a credit in favor of all investors in Keep Policies, except for Acheron which was specifically excluded (the "2 Million Credit");

(d) The Court entered an Order approving the $2 Million Credit in September, 2018 (the "September 2018 Order");

(e) Acheron was not served with or given notice by the Trustee of the Receiver's Motion or the September 2018 Order;

(f) Once it became aware of the September 2018 Order, Acheron filed a Rule 60(b) motion with this Court alleging that the Trustee's application of the $2 Million Credit for the benefit of some investors in Keep Policies, but not Acheron, violated the March 2015 Agreement (the "60(b) Motion");

(g) In the 60(b) Motion, Acheron sought limited relief from the September 2018 Order "requiring the Trustee to apply the $2 Million Credit ratably in favor of Acheron and other [investors in Keep Policies] as required by the March 2015 Agreement";[3]

(h) The Court denied Acheron's 60(b) Motion on the grounds that the March 2015 Agreement applied only to rights granted by the Trustee, while the $2 Million Credit was being granted by the Receiver (the "60(b) Order");[4]

---

[3] *See,* Receivership Action DE 2519, ¶35.

[4] *See,* Receivership Action DE 2528.

        (i)       The 60(b) Order is final and not subject to a pending appeal.[5]

Contrary to the Trustee's arguments, Acheron does not seek to re-litigate the issue presented to and resolved by the Court in the 60(b) Order, namely, whether pursuant to the March 2015 Agreement, Acheron was entitled to a pro rata share of the $2 Million Credit. But what Acheron does assert is that, *in connection with the process leading up to the entry of the September 18 Order*, the Trustee breached certain obligations and duties owed to Acheron.

The Complaint sets forth the substantive (as distinguished from background) allegations relating to the $2 Million Credit in paragraphs 108 and 109. Those allegations focus on the *Trustee's* actions, specifically, the Trustee's role in "instigating, encouraging or participating in" the Receiver's decisions regarding the $2 Million Credit and the Trustee's failure to "provide Acheron with formal or informal notice of the [Receiver's Motion and the September 2018 Order]."[6] These allegations were not the basis for Acheron's 60(b) Motion, nor did the Court address or resolve these allegations when it issued the 60(b) Order.

Acheron agrees with the Trustee that issue preclusion is appropriate when all four of the following elements are satisfied: (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior suit was a necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. *See, Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1251 (11th Cir. 2014). Here, *none* of the four required elements are satisfied.

First, the issues raised by Acheron in the 60(b) Motion and addressed by the Court in the

---

[5] Although paragraph 61 of the Complaint states that the 60(b) Order was appealed, the appeal was thereafter voluntarily dismissed.

[6] *See,* Complaint ¶¶108-09.

60(b) Order are, at most, tangentially related, and certainly not identical, to the allegations set forth in the Complaint. The primary focus of the Complaint is the breach by the Trustee of contractual and fiduciary duties under agreements that were entered into (and breached by the Trustee) many years before the Receiver received the $2 Million Credit in 2018. Determining whether the Trustee breached a contractual or fiduciary duty in 2015, for example, is not identical to deciding if the Trustee also breached a separate contractual or fiduciary duty in 2018.

Second, the issues actually raised in the Complaint that have any connection to the $2 Million Credit are very narrow in scope and limited to: (a) the *Trustee's role* in the Receiver's decision to apply the $2 Million Credit so that it did not benefit Acheron and (b) the *Trustee's failure* to give Acheron notice of the Receiver's Motion, even though Acheron was specifically identified (for purposes of exclusion) in that motion. *See, generally,* Complaint ¶¶108-09. None of these issues was "actually litigated" in the context of Acheron's 60(b) Motion.[7] In fact, in the 60(b) Motion, Acheron specifically reserved it rights with respect to defaults by the Trustee that are now addressed in the Complaint.[8]

The third requirement for issue preclusion – that the Court's determination of the "identical" and "actually litigated" issue be "necessary" – does not and cannot apply because the Trustee cannot even identify the identical and actually litigated issue, which Acheron is supposedly reasserting in the Complaint. As noted, the Complaint does not re-raise or claim any entitlement to a pro rata portion of the $2 Million Credit as Acheron did in the 60(b) Motion.

---

[7] Although the Court stated in the 60(b) Order that "the decision and direction for how the Restitution Funds should be administered was made by the *Receiver*, not the Trustee" (italics in original), the Court did not determine the nature and extent of the Trustee's role in causing the Receiver to make his decision because that issue was not relevant to the Court's decision.

[8] *See,* Rule 60(b) Motion, fn. 4. "By filing this Motion, Acheron is not waiving any defaults *by the Trustee* under the March 2015 Agreement and Trust Agreement and Acheron reserves all of its right, claims and remedies thereunder" (emphasis added).

Nor does the Complaint allege that the September 2018 Order conflicts with the Court's Order approving the March 2015 Agreement, as Acheron argued in the 60(b) Motion. However, even if the 60(b) Order could be (mis)construed as deciding any issue relating to the conduct of the Trustee relative to the entry of the September 18 Order, the determination of such issue was not a *necessary* part of the 60(b) Order.

There is no dispute that the $2 Million Credit was received by and in the possession of the Receiver. There is also no dispute that it was the Receiver who filed the motion seeking authority to disburse the $2 Million Credit. Although Acheron believes the Trustee was involved in the Receiver's decision making process, it was not *necessary* for the Court to assess the nature and extent of the Trustee's involvement, nor did the Court make any findings or reach any conclusions concerning the Trustee's involvement.

The last requirement – a full and fair opportunity to litigate the "issue" – is equally inapplicable because there is no "identical" and "actually litigated" issue that Acheron re-raises in the Complaint. But, again, if the 60(b) Order could be (mis)construed as deciding any issue relating to the conduct of the Trustee, Acheron did not have a full and fair opportunity to litigate the issue.

For purposes of the 60(b) Order, the Court understood that Acheron believed it was irrelevant whether it was the Receiver or the Trustee who made the decision to exclude Acheron from the $2 Million Credit. The Court stated, "Acheron submits that whether it was the Trustee's decision or the Receiver's decision is, in practice, a distinction without a difference…." *See,* 60(b) Order, p. 5. The 60(b) Motion was predicated on the fact that it was the Trustee who was *administering* the $2 Million Credit in alleged violation of the March 2015 Agreement, not that it was the Trustee who was the decision maker.

If the Trustee now contends that the Court affirmatively determined that the Trustee was *not* involved in the Receiver's decision to exclude Acheron from the $2 Million Credit, Acheron had no notice or reason to expect that this issue was actually pending before the Court. Acheron never asked the Court in the 60(b) Motion to determine the nature and the extent of the Trustee's involvement in the Receiver's decision.

Moreover, the 60(b) Motion was decided on papers, without a hearing. If the Court believed that it was *necessary* to determine the level of the Trustee's involvement before the Court could decide the 60(b) Motion, Acheron had no notice of the Court's position. The Court also had no evidentiary basis on which to assess the nature and extent of the Trustee's role because no discovery was ever conducted and no affidavits were ever submitted by the parties. If the Court did determine any issue relating to the Trustee's conduct when the Court issued the 60(b) Order, Acheron plainly did not have a full and fair opportunity to litigate the issue.

In short, the Trustee argues that, because a handful of allegations in the Complaint simply *reference* the $2 Million Credit, the entire Complaint is now barred by issue preclusion. The Trustee's argument fails because none of Acheron's allegations in the Complaint that mention the $2 Million Credit have anything to do with the limited issue actually decided by the Court in the 60(b) Order. However, assuming solely for the sake of argument, that some aspect of the Court's 60(b) Order touched on an issue that is now raised in the Complaint, the Court's decision on that issue was neither "necessary" to the 60(b) Order, nor did Acheron have a full and fair opportunity to litigate the issue.

## IV. KEEP POLICY INVESTOR STATUS

The Trustee next argues that Acheron is not a Keep Policy Investor and, therefore, any causes of action based on that status should be dismissed. *See,* MTD p. 14. Solely for the sake

of argument, even if the Trustee were correct that Acheron is not a Keep Policy Investor under the Trust Agreement, the Trustee fails to explain how that would justify dismissal of Acheron's causes of action for breach of contract arising under the March 2015 Agreement and the APAs. Even more inexplicable is how Acheron's alternative claim for breach of the Trustee's *implied* fiduciary duty, which explicitly is *not* dependent upon Acheron's status as a Keep Policy Investor, is also subject to dismissal. *See,* Complaint ¶30.[9]

> The definition of "Keep Policy Investors" in the Trust Agreement is as follows:
>
>> "Keep Policy Investors" means persons who have invested in an entire interest or a fractional interest in a Keep Policy owned of record by the Receivership Entities, and whose interest in such Keep Policy has not been forfeited as of the Closing Date."

In the Complaint, Acheron alleges that it is a Keep Policy Investor under the Trust Agreement. Complaint ¶¶ 27-29, 54. To counter this allegation, the Trustee first argues in a conclusory fashion that the definition of Keep Policy Investor "necessarily encompasses only victims of the Mutual Benefits fraud prior to the appointment of the Receiver." MTD, p. 7. Acheron obviously disagrees with the Trustee's interpretation of the Trust Agreement and believes that interpretation of the agreement is an issue for a jury to decide. But the legal standard governing the MTD is merely to determine whether Acheron has alleged a claim; it is not the place to debate or resolve the merits of the parties' respective positions.

---

[9] Section 30 of the Complaint states: "Alternatively, *even if Acheron is not a 'Keep Policy Investor' as defined in the Trust Agreement*, because the Trustee owns, controls and administers Keep Policies in which Acheron purchased fractional interests pursuant to both the Receiver APA and the APAs, the Trustee owes Acheron implied fiduciary duties that are co-extensive with his fiduciary duties to Keep Policy Investors including, without limitation, duties of loyalty and good faith  (italics added).

The Trustee next argues that Acheron specifically failed to allege that it invested in a Keep Policy owned of record by the Receivership Entities. This is inaccurate. Acheron alleged that it purchased fractional interests in each Receivership Entity's right, title and interest in certain Keep Policies. Complaint ¶¶ 19-20. Acheron alleged that it was an "investor" in Keep Policies. Complaint ¶ 24. Acheron alleged that the intention of the Trust Agreement was to include Acheron in the definition of "Keep Policy Investor." Complaint ¶¶ 27-28. Lastly, Acheron specifically alleged that, "Acheron is a Keep Policy Investor, as defined in the Trust Agreement." Complaint ¶ 54. Taken together, and viewed in the light most favorable to Acheron, there is no question that Acheron properly alleged that it is a Keep Policy Investor.

The Trustee focuses on the words in the definition "invested in" and "owned of record by the Receivership Entities" to support his argument that Acheron is not a Keep Policy Investor. This focus is misplaced.

First, there is no question that Acheron "invested in" the Keep Policies. The Trustee's argument that Acheron only "purchased interests" in Keep Policies, rather than invested in them, is pure semantics. Moreover, the Trustee's focus on "invested in" would presumably exclude any holder of an interest in a Keep Policy who acquired his interest by bequest or gift from an investor – this has never been a position taken by the Trustee. In any event, Acheron specifically alleged that it was an "investor." Complaint ¶ 24.

The Trustee's next argument interpreting the phrase "owned of record by the Receivership Entities" is a substantive argument that, again, is not appropriate for a motion to dismiss. But, even a cursory review, demonstrates the argument lacks merit.

In the first instance, the Trust Agreement does not identify the date on which the policy "must be owned of record" by the Receivership Entities. Here, again, the Trustee's proposed

interpretation of the definition would exclude successors to Keep Policy Investors, who acquired their interests in Keep Policies subsequent to the creation of the Trust, because those successors acquired interests in Keep Policies at a time when they were no longer owned of record by the Receivership Entities. Again, this is not the Trustee's position, except when he is dealing with Acheron.

The Trustee also makes the self-serving argument that "it would be illogical" for the Trust Agreement to grant Acheron the same protections as the initial investors in Keep Policies.[10] There is nothing illogical about granting Acheron identical protections. Acheron owns interests in the same exact Keep Policies as the other investors. Moreover, the Trustee has complete control over and is entrusted, as a fiduciary, with administering Keep Policies in which *both* Acheron and initial investors share interests.

To the contrary, it would be illogical if the Trust Agreement excluded Acheron from the definition of Keep Policy Investor. In that case, the Trustee is exercising *complete control* over a Keep Policy in which Acheron has an investment interest. Acheron's purchase of interests provided valuable consideration to and benefited the Trust and the other Keep Policy Investors. But, according to the Trustee, even though he exercises complete control over Acheron's investments, he has absolutely no duty (express or implied) to administer, preserve or protect Acheron's interests.

Acheron agrees with the Trustee that a court will "attempt to give meaning and effect, if possible, to every word and phrase in the contract in determining the meaning thereof, and a construction which neutralizes any provision of a contract should never be adopted if the contract can be so construed to give effect to all of the provisions …" (citations omitted). MTD, p. 7.

---

[10] *See,* Motion p.6.

Along these same lines, a fundamental principle of contract interpretation is that an interpretation that leaves portions of the contract language useless, inexplicable, inoperative, meaningless, or superfluous should be rejected. *See Panama Music, Corp. v. Universal Music Group Inc*., No. 12–20200–CIV–Gold/Goodman, 2013 WL 12310734, at *7 (S.D. Fla. July 9, 2013) (noting parenthetically that "[b]y examining the entire contract, we safeguard against adopting an interpretation that would render any individual provision superfluous"); *see also Veniard v. NB Holdings Corp*., No. 3:98–CV–446–J–21A, 2000 WL 33988085, at *8 (M.D. Fla. Aug. 8, 2000) ("Normal contract interpretation requires a court to avoid constructions which render a clause of the contract superfluous or without meaning."). Applying these established contract interpretation principles negates the Trustee's argument that Acheron is not a Keep Policy Investor.

For example, Section 3.1(b)(xvii) of the Trust Agreement grants the Trustee the power and duty, under certain circumstances, to "direct the sale … of the Keep Policies, and to distribute the proceeds … of the Keep Policies … to the *Keep Policy Investors* in such manner as the Trustee determines to be appropriate." If the Trustee's interpretation of the definition of Keep Policy Investor is correct, this provision authorizes and directs the Trustee to sell a Keep Policy in which Acheron had a fractional (or even a 100%) interest and distribute the sale proceeds not to Acheron, but to "Keep Policy Investors." It is plainly the Trustee's interpretation that is "illogical," not Acheron's.

But, even if the definition of "Keep Policy Investor" could be deemed ambiguous, the dismissal of Acheron's claims is still unwarranted. It is well established that the interpretation of an ambiguous contract presents a question of fact and, therefore, dismissal at the pleading stage is inappropriate. "Where a contract is reasonably or fairly susceptible of different

constructions, it is ambiguous, and because interpretation of ambiguous contracts potentially involves questions of fact, dismissal under Rule 12(b)(6) is inappropriate." *Ventana Hotels & Resorts, LLC v. Habana Libre Hotel, LLC*, No. 06-22993-CIV, 2007 WL 2021940, at *2 (S.D. Fla. July 11, 2007) (internal citations omitted); see also *Walsky v. Monel, Inc*., No. 12–23031–CV, 2012 WL 4338868 (S.D. Fla. Sept. 20, 2012), at *3 ("[W]hen the language of a contract is ambiguous, its construction presents a question of fact, which of course precludes summary dismissal on a Rule 12(b) (6) motion.") (internal citations omitted). For that reason alone, the Trustee's attempt to dismiss any of Acheron's claims as a matter of law based upon the Trustee's disputed and flawed interpretation of the definition of Keep Policy Investor should be denied.

## V. ENCUMBERED TITLE

In the Complaint, Acheron alleged that the Trustee breached his obligations under the APAs and Bills of Sale by requiring Acheron to pay at least $1.5 million in premiums owed on Keep Policies that had accrued before closing, even though Acheron was only contractually required to pay premiums accruing *after* Acheron acquired its interest in the Keep Policies.[11] In the MTD, the Trustee does not address the sufficiency of Acheron's allegations.

Instead, he argues the merits and asserts that his actions did not breach his contractual obligations.[12] This is improper. *See, Hansen*, 2008 WL 816686, at *3 (M.D. Fla. Mar. 26, 2008) ("Defendant essentially argues the merits of Plaintiffs' breach of contract claim, which is improper on a motion to dismiss."); *see also, Conocophillips*, 2007 WL 2021959, at *4 (M.D. Fla. July 11, 2007) ("Whether or not U.S. Agri-Chemicals will be able to sustain its claim for breach of contract on a Motion for Summary Judgment is a matter for another day."). Acheron

---

[11] Complaint ¶103-04.

[12] MTD, p. 10.

understands the Trustee disputes Acheron's position. However, the MTD is not the appropriate place to resolve the dispute.

## VI. DELAYS IN OFFERING

The arguments made by the Trustee in the MTD under the heading "Delays in Offering" confuse, conflate and misstate the Complaint, notwithstanding that Acheron's allegations were very clear and specific. To recap those allegations, Acheron alleges that, shortly after entering into the March 2015 Agreement, the Trustee breached §5 of the agreement by changing his "practices and procedures" and delaying the timing of his offer to sell Keep Policies to Acheron. Complaint ¶¶ 59, 83-85 and 90.

Acheron also alleges that the Trustee's delay in offering Keep Policies for sale breached §2 of the March 2015 Agreement because the delay allowed defaulting Keep Policy Investors an additional window of time, post-default, to benefit if the Keep Policy matured during the delay period. Complaint ¶¶ 92-97. The Trustee's delay in offering Keep Policies for sale to Acheron also caused a breach of the APAs and the Bills of Sale because the delay required Acheron to pay premiums for Keep Policies prior to Acheron acquiring the interest in those policies. Complaint ¶¶ 101-03.

Against this backdrop of distinct factual allegations, the Trustee makes several arguments that are just plain wrong. First, the Trustee wrongly claims that Acheron did not allege that a Keep Policy ever matured during the delay period or that Acheron was damaged.[13] The Trustee apparently overlooked paragraph 98 of the Complaint.[14]

---

[13] MTD p. 10.

[14] Paragraph 98 of the Complaint states: "On information and belief, one or more Keep Policies matured during the delay period and were not offered by the Trustee for sale to Acheron. Acheron therefore did not receive the proceeds realized from interests in those matured Keep

Next, the Trustee raises two claims that were *never* asserted by Acheron and proceeds to argue that Acheron (not surprisingly) failed to state any basis for those claims. The Trustee first directs the Court's attention to the language in §5 of the March 2015 Agreement requiring the Trustee to afford Acheron an opportunity to purchase an interest in a Keep Policy in which Acheron already owns an interest "before the Trustee allows the policy to lapse." MTD, p.11. The Trustee then argues that Acheron did not allege the Trustee allowed a Keep Policy to lapse before offering it for sale. *Id.*

The Trustee is correct. Acheron did not allege that the Trustee allowed a policy to lapse before offering it for sale because that is *not* Acheron's claim. But, what Acheron did allege is that the Trustee improperly changed his sale policies and procedures to favor other Keep Policy Investors by delaying sale offers. This change caused Acheron damages including (but not limited to) paying an additional $1.5 million in premiums for interests in policies as a result of his delay, even though Acheron could never benefit from any policies that matured during the delay period. The Trustee simply ignores Acheron's actual "delay" claims.

Continuing to invent non-existent claims, the Trustee next directs the Court's attention to Acheron's allegation in paragraph 93 that the Trustee refused to sell Acheron interests in *matured* Keep Policies. This allegation, while true, is again *not* the basis for any claim that Acheron asserts against the Trustee. Instead, it is a background fact to explain how the Trustee's delay in offering Keep Policies for sale caused harm to Acheron, while benefiting defaulting investors. The Trustee uses this background allegation to claim (wrongfully) that Acheron seeks to collect an unconscionable windfall by purchasing already matured policies at a discount. MTD, p.12. Acheron simply seeks to hold the Trustee to his contractual obligations under the

---

Policies that Acheron would have otherwise purchased. Instead, the proceeds were received by one or more Defaulting Investors to the direct detriment of Acheron."

March 2015 Agreement, the APAs and the Bills of Sale.

The Trustee lacks any legitimate basis to argue that Acheron failed to state a claim arising from the Trustee's delay in offering Keep Policies for sale.  Rather than accept that fact, the Trustee invents non-existent claims that he can then try to knock down.

## VII.     BREACH OF CONTRACT / BREACH OF FIDUCIARY DUTY

The Trustee's final argument is that Acheron seeks to transform contract claims into breach of fiduciary duty claims.  MTD, p.12.  Yet again, the Trustee misreads the Complaint.

The Complaint identifies and asserts four separate causes of action, each of which is based on a different subset of the same factual allegations.  Acheron acknowledges that the facts supporting its claims overlap.  This is not a basis for dismissal.

For example, as an alleged Keep Policy Investor, Acheron is owed fiduciary duties by the Trustee.  Complaint ¶54.  But, in the March 2015 Agreement, the Trustee *contractually* agreed that he would not treat Acheron differently from other Keep Policy Investors, thereby assuming a contractual obligation to Acheron, which was equivalent to the fiduciary duties he owed to Keep Policy Investors under the Trust Agreement.  Complaint ¶57.  Under these circumstances, it is unavoidable that the Complaint alleges that certain conduct by the Trustee is a breach of both the Trustee's contractual duties and his fiduciary duties.

Pleading in the alternative is not a basis for dismissal for failure to state a claim. "[L]itigants in federal court may pursue alternative theories of recovery, regardless of their consistency." *Reichsfeld v. Miami-Dade Cnty., Fla*., No. 06-21949-CIV-GRAHAM/O'SULLIVAN, 2006 WL 8434268, at *1 (S.D. Fla. Dec. 11, 2006) (denying a motion to dismiss). It is therefore unclear why the Trustee believes Acheron's claims should be dismissed simply because a common set of facts supports more than one type of claim.  Once again, the Trustee

appears to be improperly arguing the underlying merits of Acheron's claims, not the legal sufficiency of its allegations.

## VIII. CONCLUSION

In the typical situation, a plaintiff files a motion to dismiss because the complaint fails to state facts and, instead, is predicated on legal conclusions. This is not the case here where Acheron alleges in great detail over the course of more than 30 pages when and how the Trustee breached his contractual and fiduciary duties over the course of many years. This is also not a case where a motion to dismiss is appropriate because the plaintiff failed to allege all of the elements of its claim.[15]

But, rather than accept that the Complaint was properly pled, the Trustee filed the MTD simply to delay having to file his Answer. The Trustee's attempt to dismiss the *entire* Complaint based on the Court's prior 60(b) Order (MTD, p. 13) is absurd. The 60(b) Order had absolutely nothing to do with 90% of the claims asserted in the Complaint. And the remaining 10% of the issues raised in the Complaint were only incidentally related to the issue decided by the Court in the 60(b) Order – not identical.

Similarly, the Trustee's effort to dismiss three of the four counts of the Complaint based upon his disputed interpretation of the Trust Agreement's definition of "Keep Policy Investor" (MTD, p. 14) is equally absurd because many of Acheron's claims do not arise under the Trust Agreement or they do not depend upon Acheron's status as a Keep Policy Investor. Instead,

---

[15] For example, the elements of a breach of contract claim are straight forward: existence of a contract, breach of a material contract provision and damages. The elements required for a breach of contract claim are: (1) a valid contract; (2) a material breach; and (3) damages. *Lion Life, LLC v. Regions Bank*, No. 12–81145–CIV, 2013 WL 2367823, at *2 (S.D. Fla. May 29, 2013). Each of these elements is properly alleged in the Complaint. See, e.g., Complaint ¶¶ 52, 83-100 and 144-46.

those claims arise under the March 2015 Agreement or the APAs and the Bills of Sale.  The absurdity of the Trustee's arguments is highlighted by his request to dismiss Acheron's claim for breach of an implied fiduciary duty because Acheron is allegedly not a Keep Policy Investor, even though the implied fiduciary duty claim is an alternative claim explicitly predicated on the (extremely unlikely) possibility that Acheron is *not* a Keep Policy Investor.  In any event, a motion to dismiss is not the appropriate vehicle to resolve the parties' competing interpretations over the meaning of a contract provision that, at minimum, is ambiguous.

The Trustee's remaining arguments are equally baseless and in the nature of argument over merits, not a challenge to the sufficiency of the allegations in the Complaint.  In fact, the Trustee tacitly acknowledges that he has not asserted sufficient basis to dismiss the Complaint when he asks the Court to acknowledge that, even if the MTD is only a partial motion to dismiss, the Trustee's time to answer the remaining causes of action has not expired.  For all of the reasons set forth herein, Acheron respectfully requests that the Court deny the MTD and direct the Trustee to Answer the Complaint.

Dated: Miami, Florida
       March 8, 2019

                                          ANDERSON & KREIGER LLP
                                          50 Milk Street, 21st Floor
                                          Boston, MA 02109
                                          Tel:  (617) 621-6500
                                          Steven Schreckinger, Esq.
                                          sschreckinger@andersonkreiger.com
                                          Admitted *Pro Hac Vice*

                                          SHUTTS & BOWEN LLP

                                          By:  */s/ Larry I. Glick*
                                          Larry I. Glick
                                          Fla. Bar No. 75064
                                          lglick@shutts.com
                                          Miranda Lundeen Soto, Esq.

Fla. Bar No. 637963
mlundeensoto@shutts.com
200 South Biscayne Boulevard
Suite 4100
Miami, FL 33131
Tel: (305) 358-6300

*Attorneys for Plaintiffs*