UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
Case No. 1:18-CIV-25099- MORENO

ACHERON PORTFOLIO TRUST, AVERNUS
PORTFOLIO TRUST, LORENZO TONTI
2006 TRUST, STYX PORTFOLIO
TRUST, and ACHERON CAPITAL, LTD.,

Plaintiffs,

v.

BARRY MUKAMAL, as Trustee of the
MUTUAL BENEFITS KEEP POLICY
TRUST,

Defendant.

_____/

### DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant, Barry Mukamal, solely as Trustee of the Mutual Benefits Keep Policy Trust ("Trustee"), files his Reply to Plaintiff's Response and Opposition to Defendant's Motion to Dismiss First Amended Complaint [D.E. 22]("Opposition") filed by Acheron Portfolio Trust ("Acheron Trust"), Avernus Portfolio Trust ("Avernus Trust"), Lorenzo Tonti 2006 Trust ("Tonti Trust"), STYX Portfolio Trust ("STYX Trust") and Acheron Capital, Ltd. ("Acheron Capital"), in its capacity as the investment manager for Acheron Trust, Avernus Trust, Tonti Trust and Styx Trust, (collectively, the "Plaintiffs" or "Acheron") and states the following:

Legal Standard

As set forth in the Trustee's Motion to Dismiss [D.E. 18], the well-worn, established standard of Federal Rule of Civil Procedure 12(b)(6) and cited, established interpretive case law

[12188-002/2991799/1]

1
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

supports dismissal of Plaintiffs First Amended Complaint ("Complaint") for failure to state a cause of action.

$2 Million Restitution Credit

In its first argument, Acheron contends that its claims relating to the $2 Million Restitution Credit have nothing to do with its prior motion and order in the underlying receivership case that determined Acheron is not entitled to those sums.  Opposition at 3-9. Desperately wanting the second bite at the apple to which it is not entitled, Acheron selectively ignores the allegations of its Complaint to argue that its new claims are materially different than its previously denied claims. In an effort to sidestep dismissal, Acheron now recasts its claims and argues that it only sues the Trustee for the $2 Million Restitution Credit because he did not provide it notice of the Receiver's motion authorizing him to allocate the $2 million in restitution funds to the victims of the Mutual Benefits Fraud, or some unspecified belief that the Trustee somehow "encouraged" the Receiver to file that motion.  That is only a very narrow sliver of what the Complaint alleges.

Among other things, the Complaint alleges that the Trustee "breached his fiduciary (or implied fiduciary) duty and discriminated against Acheron in favor of the Initial Keep Policy Investors ***by using Trust assets to provide credits against servicing fees payable by the Initial Keep Policy Investors, but not the servicing fees payable by Acheron***." Complaint at ¶ 126 (emphasis added).   This "credit" can only refer to the "administrative fee holiday" that forms a basis of Acheron's Complaint.  *Id.* at ¶ 107.  Acheron claims that the Receiver's decision to pay that $2 Million Restitution Credit is prohibited by the March 2015 Acheron Agreement with the Trustee, and that alleged breach of contract somehow supports a breach of fiduciary duty claim as well.  *Id.* at ¶ 106.  At the same time, Acheron concedes that "the $2 Million Credit was to be

[12188-002/2991799/1]

2
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

provided on the specific condition that it only be used to pay administrative fees payable by Initial Keep Policy Investors, and not the administrative fees payable by Acheron, and not be treated as an asset of the Trust or used for any other purpose." *Id.* at ¶ 63. These issues in the Complaint issue were squarely raised and decided in the Motion by Acheron Capital Pursuant to FRCP 60(b)(1) For Limited Relief from Order Granting Receiver's Motion for Authorization to Make Final Distribution and for Discharge of Receiver [Case No. 04-cv-60573 D.E. 2519] ("$2 Million Restitution Credit Motion").

In its Order Denying Motion by Acheron Capital Pursuant to FRCP 60(b)(1) For Limited Relief from Order Granting Receiver's Motion for Authorization to Make Final Distribution and for Discharge of Receiver ("$2 Million Restitution Credit Order"), the Court summed up Acheron's claims in those proceedings:

> Acheron argues that the Court should alter or amend the Final Distribution Order because it is in conflict with the Acheron Agreement, which states that 'the Trustee will not grant or otherwise offer to any other investors in Keep Policies, including Keep Policy Investors, any rights, disbursements, rebates, benefits, credits (through and Administrative Fee Credit or otherwise) . . . that the Trustee does not grant or offer to Acheron with respect to its interests in Keep Policies on the same terms. . .' As such, Acheron contends that the Final Distribution Order's explicit exclusion of Acheron form the administrative 'fee holiday' is a violation of the Agreement.

*Id*. at p. 4.

The Court went on to decide "As to the first point, Acheron agrees – as does this Court – with the Trustee and Receiver that Acheron is not entitled to share in the $2 million restitution credit because it is not a victim of the Mutual Benefits Corporation fraud." *Id.* at p.4. As to Acheron's remaining arguments, the Court reasoned, the $2 Million Restitution Credit "are not Trust Assets." *Id.* at p. 5. "Most importantly, the decision and direction for how Restitution

[12188-002/2991799/1]

3

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: (305) 349-2310

Funds [$2 Million Credit] should be administered was made by the *Receiver*, not the Trustee." *Id.* It then concluded, "Therefore, because the [March 2015] Acheron Agreement governs only the actions taken by the Trustee, and not the Receiver, there is no conflict with the Final Distribution Order and/or its specific exclusion of Acheron from use of the Restitution Funds." *Id.* at p. 6. There is no material difference between the argument and decision on the $2 Million Restitution Credit Motion and the allegations in Plaintiffs' Complaint.

As set forth in the Trustee's Motion to Dismiss, Acheron is precluded from re-raising the same claims that it made in the $2 Million Restitution Credit Motion. Acheron does not argue against that. Instead, Acheron now argues that is claims are solely based on the allegations that that Trustee did not provide it notice of the *Receiver's* motion or order directing the application of the $2 Million Credit and the Trustee's "instigating, causing, encouraging or participating" in the entry of an order on the Receiver's Motion. Complaint ¶¶ 108-09. Fundamentally, Acheron is seeking to now sue the Trustee because he did not notify Plaintiffs about a third party's decision to allocate criminal restitution funds to fraud victims – funds to which Plaintiffs were never entitled.

The $2 Million Restitution Credit Order determined that it was the *Receiver's* decision to apply the restitution funds in a manner to benefit the fraud victims and the Trustee was obligated to follow those instructions, stating "It was the Receiver's decision to earmark the funds for the benefit of the original victims of the Mutual Benefits Corporation fraud. . . ." $2 Million Restitution Order at p. 5. Acheron does not identify any provision of the March 2015 Acheron Agreement which imposed any notice requirement on the Trustee, and the Trustee had no fiduciary duty to notify Acheron as to the *Receiver's* Motion or the *Receiver's* decision on how to apply the $2 Million Restitution Credit. The $2 Million Restitution Credit Order also spells

[12188-002/2991799/1]

4

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

out that the March 2015 Acheron Agreement has no bearing on the Receiver's decision in allocating the criminal restitution funds, noting that that agreement "applies to rights and benefits given or granted *by the Trustee*". *Id.*.

Acheron cannot establish that the Trustee owed it a legally cognizable duty or that it sustained damages based on the Receiver's decisions and actions, relating to criminal restitution funds to which Acheron was never entitled. Logically, even if the Trustee would have advised Acheron of a motion filed by the Receiver, the result would have been the same --- Acheron would not have been entitled to any of the $2 Million Restitution Credit.  As to Acheron's current claim, that the Trustee somehow assisted or encouraged the Trustee in pursuing the allocation of the $2 million in restitution to victims, there is no underlying wrong.  As set forth in the Receiver's Motion for Authorization to Make Final Distribution and For Discharge of Receiver [Case No. 04-60573 D.E. 2516], the Receiver proposed that the restitution funds be "used for two purposes" and conferred with the "SEC" which "has indicated that it does not object to the proposed uses."  *Id*. at p. 6. The funds were to be administered by the Trust, as determined by the Court's $2 Million Restitution Credit Order. *See id*  at p. 4 ("it was the *Receiver's* decision to earmark restitution funds . . ..'"), p. 5 ("Most importantly, the decision and direction for how the Restitution Funds should be administered was made by the  Receiver and not the Trustee").  Solely for the sake of argument, even if the Trustee had "instigated, encouraged or participated in" the Receiver's lawful exercise of his Court-authorized duties to distribute criminal restitution funds to fraud victims, that cannot serve as the basis for a cause of action because the Trustee never impacted or affected Acheron's rights.

Acheron elected to weave this same factual claim relating to the $2 Million Restitution Credit throughout its counts.  Acheron re-alleged the allegations of paragraphs 62-68 and 107-

[12188-002/2991799/1]

5
Genovese Joblove & Battista, P.A.
100 S.E. Second Street • 44th Floor • Miami, Florida 33131 • Telephone: (305) 349-2300 • Facsimile: • (305) 349-2310

109 in Count I (Contract) and realleged paragraphs 62-68, 107-109 in Counts II (Fair Dealing), III (Fiduciary Duty), and Count IV (Implied Fiduciary Duty), specifically asserted that the Trustee breached his fiduciary duties to Acheron "by using Trust assets to provide credits against servicing fees payable by the Initial Keep Policy Investors, but not servicing fees payable by Acheron" (Complaint at ¶¶ 126, 130), and realleged paragraphs 125, 126, and 130 in Counts III and IV. Because those allegations cannot serve as the basis of those purported causes of action, each count should be dismissed for failure to state a cause of action.

<u>Keep Policy Investor Status</u>

The Complaint repeatedly alleges that Acheron is a "Keep Policy Investor" as defined in the Trust Agreement and is therefore entitled to certain rights and privileges that form the basis of some of Plaintiffs' claims. *See, e.g.,* Complaint at ¶¶ 29, 50, 54, 111, and 112. In its Motion to Dismiss, the Trustee contends that the Trust Agreement's plain language definition of "Keep Policy Investor" does not encompass Acheron and that any claims based on its claimed status as a Keep Policy Investor should be dismissed. Motion to Dismiss at p. 6, commencing at Section "B".

In its Opposition, Acheron "believes that interpretation of the [Trust] agreement is an issue for the jury to decide." Opposition at p. 9. Acheron's argument ignores one of the most fundamental standards relating to contract construction. *See Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)("Contract interpretation is generally a question of law. Questions of fact arise only when an ambiguous contract term forces the court to turn to extrinsic evidence of the parties' intent, such as precontract negotiations, to interpret the disputed term" (internal citations omitted)). "[W]here the contract or settlement agreement terms are unambiguous, a court may properly consider a motion to dismiss for failure

[12188-002/2991799/1]

6
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: (305) 349-2310

to state a claim for breach." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1312 (S.D. Fla. 2014).  Accordingly, this Court may properly consider the unambiguous language of the Trust Agreement to determine whether Acheron is a Keep Policy Investor in the context of a motion to dismiss.

Acheron incorporates the allegations that they are Keep Policy Investors in Count I, III, and IV specifically including:

- paragraph 29 ("[b]ecause Acheron is a Keep Policy Investor")
- paragraph 50 ("for the benefit of all Keep Policy Investors, which includes the Acheron Trusts.")
- paragraph 54 ("Acheron is a Keep Policy Investor");
- paragraph 111 ("Acheron is a Keep Policy Investor and a beneficiary of the Trustee's obligation . . .."); and
- paragraph 122 ("Acheron is a Keep Policy Investor . . ..").

Of these allegations, Count I (Contract) incorporates paragraphs 50, 54, and 111.  Complaint at ¶ 143.  Count III (Fiduciary Duty) incorporates paragraphs 29, 50, 54, 111, and 122.  *Id.* at 154. Count IV (Implied Fiduciary Duty)[1] incorporates paragraph 111 as well as paragraphs 141-2, both of which alleged acts or omissions relating to "Acheron and the other Keep Policy Investors . . .."  *Id.* at ¶ 159.  If the Court determines that Acheron is not a Keep Policy Investor, these claims fail.

As this Court has already distinguished, there is a significant difference between the victims of the Mutual Benefits Corporation fraud and Acheron, as a post-receivership purchaser of fractional interests in policies.  The $2 Million Restitution Credit Order provides: "As to the first point, Acheron agrees – as does this Court—with the Trustee and Receiver that Acheron is

---

[1]  Acheron claims that its claim for breach of implied fiduciary duty, in Count IV, is not "dependent on Acheron's status as a Keep Policy Investor . . .."  Opposition at p. 9.  Nonetheless, this Count incorporates the unequivocal allegation that "Acheron is a Keep Policy Investor . . ..". Complaint at ¶ 111.  It also alleges that the duties Acheron claimed were "to Acheron and the other Keep Policy Investors . . .." *Id.*  at ¶¶ 141, 142.

[12188-002/2991799/1]

7

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: (305) 349-2310

not entitled to share in the $2 million credit because it is not a victim of the Mutual Benefits Corporation Fraud." *Id.* at p. 4.   That distinction is made in the Trust Agreement itself, which defines "Keep Policy Investors" to mean investors who invested in a policy "owned of record by the Receivership Entities," i.e., the victims who were fraudulently induced into buying policy interests from Mutual Benefits Corporation itself. The Complaint itself alleges that Acheron bought interests from the Receiver, and later the Trustee (Complaint, ¶¶ 17-18, 37). Subsequently purchasing economic interests in these policies from the Receiver or the Trustee does not convert Acheron into a Mutual Benefits Corporation Fraud victim, *i.e.*, a "Keep Policy Investor," and Acheron's argument to the contrary is foreclosed by the unambiguous language of the Trust Agreement.

Encumbered Title

In its Opposition, at Section V, entitled "Encumbered Title," Acheron argues that it made certain allegations in the Complaint that must be accepted by the Court and that any issue raised by the Trustee can only be decided on the merits.  Opposition at p. 13-14.  In making this argument, Acheron ignores the exhibits to the Complaint, which are part of the Complaint for purposes of a motion to dismiss and control in the event of a conflict with the allegations.  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).  The Trustee's arguments to support dismissal are based on the controlling exhibits.  *See, e.g.,* Motion to Dismiss at p. 9 (referring to the language of the Asset Purchase Agreement attached as Exhibit "A" to the Complaint).  Plaintiffs do not allege that they did not receive good and clear title at closing, or that after closing they were faced with any lien, claim or liability with respect to the policy interests. Rather, their complaint is that ***at closing***, the purchase price charged included the accrued premium which had to be paid in order to keep the policy in force. See Complaint at ¶

[12188-002/2991799/1]

8
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: (305) 349-2310

86, 91. That is not an "encumbrance" as defined in the Asset Purchase Agreement. Accordingly, that claim should be dismissed as a matter of law.

Delays in Offering

In its Motion to Dismiss, the Trustee argues that Plaintiffs' claims based on delays in offering "fail because there is no allegation . . . that an investor died *and a policy matured before the investor's paid-up interest in the policy lapsed*." *Id.* at p. 10 (emphasis added). Unless an investor's interest in a policy had lapsed, Acheron should not be able to claim that it has a lawful right to even acquire the interest. Otherwise, Acheron would be seeking the right to force an investor to forfeit his or her interest before the paid up policy period expired. In Section VI of the Opposition, entitled "Delays in Offering", Acheron contends that paragraph 98 of the Complaint is a sufficient allegation to support the claim. That paragraph alleges:

> On information and belief, one or more Keep Policies matured during the delay period and were not offered by the Trustee for sale to Acheron. Acheron therefore did not receive the proceeds realized from interests in those matured Keep Policies that Acheron would have otherwise purchased. Instead, the proceeds were received by one or more Defaulting Investors to the direct detriment of Acheron.

Complaint at ¶ 98. Acheron defines a "Defaulting Investor" as an investor that is unable or unwilling to pay the premium. *Id.* at ¶ 34. Thus, it does not allege that Acheron had any right to purchase the policy or that the defaulting investor's interest had actually lapsed so that Acheron would be entitled to that policy interest. Accordingly, these claims do not support a cause of action.

Contract Claims and a Basis for a Breach of Fiduciary Duty

Acheron pled inextricably intertwined elements of contract and tort in the same allegations, seeking to assemble a claim from incompatible parts. Now, in the Opposition at

[12188-002/2991799/1]

9

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

Section VII, "Breach of Contract/Breach of Fiduciary Duty," Acheron tries to sidestep the issue by claiming that its allegations simply "overlap" and arguing that pleading in the alternative is permitted.   Again, the Complaint flatly contradicts the Opposition and the Opposition finds a new way around it.

Simply put, Acheron could potentially have rights and assert claims in contract or in tort. But, Acheron cannot jumble them up these separate rights together to fabricate a tort claim based in contract.   Acheron admits that is exactly what it is doing, arguing that the contractual obligations in the March 2015 Acheron Agreement are "equivalent to the fiduciary duties" owed by the Trustee to the non-Acheron parties Plaintiffs identify as the "Initial Keep Policy Investors".   Opposition at p. 16; Complaint at ¶ 57.     According to that allegation upon which Acheron relies, it can only have a contract-based claim arising from the March 2015 Acheron Agreement and not a tort claim.   The Trustee believes that these claims should be dismissed because they improperly commingle contract and tort based claims.

Conclusion

For the reasons set forth in the Motion to Dismiss and this Reply, the Trustee respectfully requests that this Court enter an order dismissing Plaintiffs' First Amended Complaint.

**Dated**: March 15, 2019

**Respectfully Submitted,**

**GENOVESE JOBLOVE & BATTISTA, P.A.**

s/  John Arrastia
John Arrastia
Fla. Bar No. 0072461
100 S.E. Second Street, 44th Floor
Miami, FL 33131
Tel:  (305) 349-2300
Fax: (305) 428-8832
jarrastia@gjb-law.com

[12188-002/2991799/1]

10
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: (305) 349-2310

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on March 15, 2019 on counsel for all the parties by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/  John Arrastia
John Arrastia

[12188-002/2991799/1]

11
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310